**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 10-1488

SOUTH SHORE IMPORTED CARS, INC.

Plaintiff, Appellant,

v.

VOLKSWAGEN OF AMERICA, INC.

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lynch, Chief Judge,
Souter, Associate Justice,[*]
and Stahl, Circuit Judge.

Paul Marshall Harris, with whom Murtha Cullina LLP, was on brief, for appellant.
Steven J. Yatvin, with whom Barack Ferrazzano Kirschbaum & Nagelberg LLP, was on brief, for appellee.

July 5, 2011

---

[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice**. South Shore Imported Cars, Inc. brought this action against Volkswagen of America, Inc., for breach of an auto sales franchise agreement in violation of Mass. Gen. Laws ch. 93B, known as the Dealer's Bill of Rights. The statute limits a manufacturer like V.W. from terminating a dealer's franchise agreement except for good cause, id. § 5(a), and specifically requires a reasonable opportunity to cure a violation of the agreement, id. § 5(h), and a minimum notice of 60 days with specification of cause prior to the effective date of any termination, id. § 5(b).

In December 2008, South Shore's bank cancelled its revolving credit agreement for financing inventory purchases from V.W. The bank informed V.W., which in turn notified South Shore that loss of the line of credit was a breach of the franchise agreement (a claim not disputed) and demanded that the dealer obtain a substitute. When South Shore's efforts failed, V.W. told the dealer in mid-June that it had 15 days to obtain new credit, and on July 7, 2009, V.W. served South Shore with the 60-day notice of termination, effective September 8.

Although new bank financing was elusive, South Shore's efforts to sell the dealership reached the point of a purchase-sale agreement on August 28, which was sent to V.W. on August 31. The sale was conditioned on V.W.'s approval, and South Shore requested V.W. to send the buyers an application form in accordance with the

franchise terms, requiring V.W. to treat such an application in good faith but giving V.W. time for consideration extending well beyond September 8.

On September 4, V.W. decided not to forward the form to the buyers, and South Shore filed the present action on the stated effective date of termination of the agreement, originally in state court. The state court had not acted on South Shore's request for an injunction against termination by the time V.W. removed the case to federal court, after which the parties executed a stand-still agreement requiring V.W. to continue to deal with South Shore during litigation, but expressly saving V.W.'s claims and rights, and this was embodied in an injunction issued by agreement. In the action itself, South Shore claimed that V.W.'s willingness to continue to deal with it from December 2008 to July 2009 constituted a waiver of South Shore's breach, thus depriving V.W. of the good cause necessary to justify termination, and entailing the further consequence that V.W. itself broke the agreement by refusing to tender a franchise application to the buyer and consider it in good faith.

On cross-motions for summary judgement, the district court saw no merit in the waiver argument. The court went on, however, to consider South Shore's claim that a week before the effective date of franchise termination, V.W. was obligated by the franchise agreement and by Mass. Gen. Laws ch. 93B, § 4(c)(8), to give full

consideration to the intending buyer as an applicant for a dealership, which if favorable would supposedly have satisfied the condition on which the purchase-sale agreement was hinged. In awarding summary judgement to V.W., the district court held that no obligation to consider the buyer ever arose under the terms of the contract or the statute, because the duty to consider was premised on South Shore's possession of a franchise that could be sold, whereas by the week before the termination date the franchise agreement was no longer in full force and effect and consequently the franchise could not be conveyed.

In pursuing de novo review in this court, Wilson v. Moulison N. Corp., 639 F.3d 1, 6 (1st Cir. 2011), South Shore has abandoned its waiver theory, and argues instead that the district court was in error to rest on the notion of a diminished franchise right as negating V.W.'s obligation to consider a franchise application by the buyer. South Shore says it was not purporting to transfer the franchise, but was instead attempting to sell its assets and inventory during the period within which, it claims, the franchise agreement was in full effect and it was statutorily entitled to attempt to "cure" the otherwise good cause to terminate.

This appeal can be resolved fairly simply on V.W.'s argument that its obligation under the franchise agreement to consider a buyer at South Shore's behest did not extend to a buyer proposed a week before the scheduled termination of the franchise itself.

This route to decision necessarily clears several hurdles that South Shore stresses at some length. First, South Shore claims that an injunction against terminating the franchise during the pendency of litigation as authorized by § 5(g) of the statute required V.W. to respect South Shore's contract rights (such as requiring consideration of a buyer's application for franchise) as if the parties were dealing without imminent termination. However that may be, the short answer is that South Shore's request for an injunction under § 5(g) was never ruled upon, since it was superceded by the parties' agreement for an injunction on terms to which the parties assented. Those terms provided that consent to enter the order was not to be taken as waiving V.W.'s position that the franchise agreement had already terminated, or as an extension or renewal of that agreement. If, then, V.W.'s litigating position was sound (as we hold it was), it was unaffected by the consensual injunction.

Second, we see nothing potentially dispositive in South Shore's argument that its statutory right to a reasonable time to cure any material breach amounting to good cause to terminate extended to a right to demand V.W.'s active consideration of a buyer with good bank credit so long as it requested this before the moment of franchise termination. The argument confuses two distinct rights. The statutory right to cure within a reasonable time, § 5(h), applies by definition to the act of breach, losing

inventory financing. South Shore never succeeded in getting new credit and has never claimed that it did. V.W.'s acceptance of a proposed buyer by awarding a new franchise would not have cured the breach but would have obligated South Shore to terminate its own franchise agreement voluntarily in accordance with its terms. Terminating the franchise would have ended the period of the breach, but not by curing it.

Finally, it does not matter whether the district court was on sound ground when it reasoned that the purchase-sale agreement failed to trigger an obligation on V.W.'s part to consider the buyer's franchise application because at the moment of South Shore's demand the franchise was no longer in full force, and South Shore was therefore attempting to "assign" what it "no longer owned." South Shore Imported Cars, Inc. v. Volkswagen of America, Inc., No. 09-11570, 2010 WL 1137558, at * 6 (D. Mass. March 22, 2010). For even if the sales contract was not an attempted assignment of the franchise (as by its inclusion of intangibles), and even if any such purported assignment was at odds with the franchise agreement, South Shore still has its claim that V.W. was bound by statute to honor its contractual obligation to give good faith consideration to a franchise application by a proposed buyer, and for reasons given in V.W.'s brief we are satisfied that this claim misconstrues the contract.

Quite simply, V.W.'s contractual obligation to consider the

application of the franchise's intending buyer cannot be applied to South Shore's request a week before termination, because both by statute and by contract, V.W. had the right to a longer period to make due diligence enquiries about the buyer than the remaining period of the franchise. The statute gives V.W. at least 30 and up to 60 days to decide on the buyer's application, § 4(e)(8), and the franchise agreement provides for 45. South Shore is thus claiming that V.W. must exercise due diligence and come to a decision (or be bound by a default approval under § 4(e)(8)) beyond the effective period of the franchise agreement.

South Shore has two answers to this objection. The first is to emphasize that the agreement obligates V.W. to give good faith consideration to any buyer proposed by South Shore "during the term of this agreement," which it in effect says must mean that V.W. is obliged to consider an eleventh-hour application even if it requires action beyond the stated termination date. We think this is an unlikely reading, however, in light of the further provision in the next subsection of the agreement that if a manufacturer does approve such an application, "[u]pon the consummation of Dealer's approved proposal, Dealer will deliver to [V.W.] a voluntary termination of this Agreement." But in circumstances like those here, a voluntary termination would be superfluous. Even on South Shore's view, the termination for unremedied good cause would be postponed only until V.W. made a decision (in fact or by default),

after which the prior dealer would have no franchise under the agreement that it could terminate voluntarily. Since contracts are to be read as a whole, the reasonable reading of the agreement is that V.W. must consider a dealer's proposed successor only when the remaining duration of the agreement includes sufficient time for the period of enquiry by the manufacturer that the statute and agreement allow.

South Shore has pointed to nothing in the statute specifically inconsistent with this reading,[1] but it does argue that if such a reading is accepted, "nothing would prevent a manufacturer from simply sending a notice of termination to deliberately thwart and delay a dealer from selling its dealership assets to a third-party buyer." But, as is already apparent, there is much to prevent such a ploy: § 5(a) requires good cause for a termination and forbids bad faith and arbitrary or unconscionable action.

**Affirmed.**

---

[1]Because no injunction under § 5(g) of the statute was issued in this case, we intimate nothing about whether such an injunction would require a different result.